1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

Melina Solano Bejarano,

12

Petitioner,

13

v.

14

Christopher Chestnut et al.,

15

Respondents.

Case No. 1:25-cv-01905-JLT-SAB

ORDER CONVERTING THE MATTER TO A PRELIMINARY INJUNCTION[1]; GRANTING THE PRELIMINARY INJUNCTION IN PART; AND REFERRING THE MATTER TO THE ASSIGNED MAGISTRATE

(Doc. 3)

16

## I.    INTRODUCTION

17
18

Before the Court for decision is Melina Solano Bejarano's request for a temporary

19

restraining order (Doc. 3), filed in conjunction with her petition for a writ of habeas corpus

20

brought under 28 U.S.C. § 2241 challenging her ongoing immigration detention. (Doc. 1.)

21

Having evaluated the TRO request, Respondents' opposition, (Doc. 8) and Petitioner's reply

22

(Doc. 9), the Court converts the matter into a motion for preliminary injunction, **GRANTS** that

23

motion **IN PART**, and **REFERS** the matter to the assigned magistrate judge for a determination

24

on the merits.

## II.    FACTUAL & PROCEDURAL BACKGROUND

25
26

Petitioner is an asylum seeker from Peru who entered the United States without

27
28

---

[1] Upon the agreement of the parties, the Court converts the motion for temporary restraining order into one for preliminary injunction. (Doc. 8 at 1; Doc. 9 at 11.) The parties have also affirmatively declined an evidentiary hearing. (*Id.*)

1   inspection on or about June 25, 2021 at which time she was apprehended by the Department of

2   Homeland Security near San Ysidro, California. (Doc. 8 at 9; Doc. 3 at 1.) She was subsequently

3   transported to the San Diego Processing Center where she was briefly detained. (Doc. 8 at 9.) On

4   June 29, 2021, Petitioner was served with a I-220A Notice to Appear pursuant to the

5   Immigration and Nationality Act § 212(a)(6)(A), charging her as an immigrant who, at the time

6   of application for admission, did not possess a valid unexpired immigrant visa or other valid

7   entry document. (Doc. 8 at 9, 12.)  On June 30, 2021, Petitioner was granted parole and was

8   released on supervision due to capacity issues. (Doc. 8 at 9.)  In doing so, immigration officials

9   necessarily determined that Petitioner did not present a risk of flight or danger to the community.

10   *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the

11   officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the

12   conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to

13   the satisfaction of the officer that such release would not pose a danger to property or persons,

14   and that the alien is likely to appear for any future proceeding.").

15      As a condition of her release, Petitioner was required to enroll and successfully

16   participate in the Alternatives to Detention ("ATD")/ Intensive Supervision Alternative Program

17   ("ISAP"). (Doc. 8 at 9.) According to Deportation Officer ("DO") Noah Kichak, Petitioner was

18   informed of her reporting instructions and that failure to comply with the conditions of her

19   parole may result in the revocation of her release without further notice. (*Id.* at 9, 17.) On

20   January 25, 2022, Petitioner appeared in immigration court in Van Nuys, California. (Doc. 3 at

21   3; Doc. 8 at 12.)

22      Following her release, Petitioner established herself in Bakersfield California, where she

23   lived with her partner and two young children, one of whom is a U.S. citizen. (Doc. 3 at 3.)

24   Petitioner also filed for asylum in November 2023 with United States Citizenship and

25   Immigration Services ("USCIS") and subsequently attended her USCIS biometrics appointment.

26   (Doc. 3 at 3.) Petitioner also claims to suffer from health issues which require surgery and a

27   debilitating post-operative recovery. (*Id.*)

28      Petitioner contends that she "has done everything the government asked her to do,"

including diligently attending every Immigration and Custom's Enforcement ("ICE") and USCIS check-in and complying with all her ISAP requirements. (Doc. 3 at 3.)

Respondents describe Petitioner's ISAP compliance differently, asserting that Petitioner violated the conditions of her release several times between July 2021 to November 2025 (Doc. 8 at 9; 19):

- July 19, 2021: Missed In-Person Home Visit
- August 23, 2021: Master Zone Leave Alert
- January 10, 2022: Missed In-Person Home Visit
- February 28, 2022: Missed In-Person Home Visit
- June 24, 2022: Missed In-Person Home Visit
- September 19, 2022: Missed Biometric Check-in
- November 7, 2022: Missed Biometric Check-in
- February 20, 2023: Missed Biometric Check-in
- September 11, 2023: Missed In-Person Home Visit
- October 13, 2023: Missed Virtual Home Visit
- December 6, 2023: Missed In-Person Office Visit
- December 28, 2023: Missed In-Person Home Visit
- August 19, 2024: Missed Biometric Check-in
- January 20, 2025: Missed Biometric Check-in
- November 3, 2025: Missed In-Person Home Visit

Petitioner claims that her most recent November 2025 violation occurred because she was two minutes late for an ISAP interview at her home because she was picking up her daughter from pre-school. (Doc. 3 at 3.) Petitioner claims to have alerted ISAP officials that she was almost to her house and upon arriving, saw an ISAP officer. (*Id.*) After trying to speak with the ISAP officer, Petitioner claims the officer informed her she was in violation of her conditions of release and left. (*Id.*) Minutes later, Petitioner received a message instructing her to appear at the ISAP office the following day – November 4, 2025. (*Id.*) In an effort "to avoid any misunderstanding and acting in good faith," Petitioner claims that she went to the ISAP office

1   that very same day, but upon arriving at the ICE office in Bakersfield, California, Petitioner was

2   detained for multiple violations of her conditions of release. (*Id.*) Respondents did not provide

3   the Court with a copy of Petitioner's arrest warrant. Petitioner is currently detained at the

4   California City Detention Facility in California City, California.

5          On December 17, 2025, Petitioner filed a petition for writ of habeas corpus (Doc. 1)

6   asserting that her re-detention and continued detention violate her procedural and substantive

7   due process rights under the Fifth Amendment. She also filed a motion for a temporary

8   restraining order requesting immediate release and other injunctive relief. (Doc. 3.) The

9   government opposes the issuance of preliminary injunctive relief and maintains that Petitioner's

10  detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(2).

11  (*See generally* Doc. 8.)

12         In setting the briefing schedule as to the pending motion for a temporary restraining

13  order, the Court specifically ordered Respondents to substantively address the court's recent

14  decision in *Rocha Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606

15  (E.D. Cal. Dec. 9, 2025) and *Bernal v. Albarran,* No. 25-CV-09772-RS, 2025 WL 3281422, at

16  *6 (N.D. Cal. Nov. 25, 2025). (Doc. 5.) Specifically, the Court asked Respondents to address in

17  their opposition "why the facts [here] suggest a change in circumstance material to the question

18  of whether Petitioner is a danger to public safety or a flight risk." (*Id.*)

19                              **III.    LEGAL STANDARD**

20         The standard governing the issuing of a TRO is "substantially identical" to the standard

21  for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240

22  F.3d 832, 839 n. 7 (9th Cir. 2001). A party seeking a preliminary injunction must establish: (1)

23  they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable

24  harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their]

25  favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555

26  U.S. 7, 20 (2008); *see also Ctr. For Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011)

27  ("After *Winter,* 'plaintiffs must establish that irreparable harm is likely, not just possible, in

28  order to obtain a preliminary injunction.'").

The party seeking a preliminary injunction has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding that the moving party has "the burden of persuasion"); *see also Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *Id.* Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

## IV.    ANALYSIS

### A.    Likelihood of Success on the Merits

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Petitioner argues she is likely to succeed on her claim that Respondents violated her Fifth Amendment Due Process rights when she was detained without notice or provided a custody hearing before a neutral arbiter. (Doc. 3 at 8.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session, 872 F.3d 976*, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id*. at 693–94. "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." *Garro Pinchi v. Noem*, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471,

482 (1972)). Other courts, including this Court, have held similarly. *J.E.H.G. v. Chestnut*, No. 1:25-CV-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)).

In analyzing procedural due process claims such as this one, courts must first determine whether a protected liberty interest exists under the Due Process Clause. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989.) If a protected liberty interest is found to exist, the court then must examine whether the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. (*Id.*) To the extent that Respondents substantively address Petitioner's due process argument, they deploy a blanket assertion that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and therefore categorically ineligible for a bond hearing. (Doc. 8 at 5.) Respondents further contend that Petitioner's prior release at the discretion of DHS pursuant to 8 U.S.C. § 1226 "does not have the effect of having converted Petitioner's presence in the United States into an 'admission.'" (*Id.*)

Although Petitioner's claim is ultimately constitutional in nature, it turns on whether section 1225(b) or section 1226(a) justify Petitioner's re-detention. Courts nationwide, including this one, have overwhelmingly rejected Respondents' new legal position and found the DHS policy unlawful. *See, e.g.*, *Ortiz Donis v. Chestnut*, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); *see also*, *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Hortua v. Chestnut*, et al., No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), —— F.Supp.3d ——, ——, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

Even assuming Respondents are correct that § 1225(b) is the applicable detention

authority for all "applicants for admission," Respondents fail to meaningfully contend with the liberty interest created by the fact that the Petitioner in this case was released on recognizance in June 2021, *prior to the manifestation of this interpretation*.

Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue. *Pinchi*, 2025 WL 2084921at *3. In *Mathews*, the Court determined the following:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

As to private interest, during her approximately four years on parole, Petitioner cared for her partner and children, applied for asylum, built relationships with many in her community, and maintained a clean criminal record. Thus, parole allowed her to build a life outside detention, albeit under the terms of that parole. Petitioner has a substantial private interest in being out of custody and his detention denies his that liberty interest. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

In distinguishing the present case from in *Rocha Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) and *Bernal v. Albarran,* No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025), Respondents offered Petitioner's myriad violations her release conditions over the last four years as evidence of changed circumstances material to flight risk. (Doc. 8 at 6.) In support of their arguments, Respondents offer the declaration of DO Kichak, who referenced three exhibits from Petitioner's

1    case file and records kept by DHS: DHS Form 1-862 NTA, Form I-220A, ATD Enrollment

2    documentation, and list of Petitioner's conditional release violations. (Doc. 8 at 11-19.)

3        In *Rocha Chavarria v. Chestnut*, the court recently found that the Petitioner had

4    demonstrated a likelihood of success on the merits of his procedural due process claim because

5    (1) he had demonstrated a liberty interest in his continued release, and (2) that his continued

6    detention without written notice and a hearing was unlawful. *Rocha Chavarria v. Chestnut*, No.

7    1:25-cv-1755-DAD-AC, 2025 WL 3533606, *5 (E.D. Cal. Dec. 9, 2025). The court ordered the

8    immediate release of Petitioner who allegedly "incurred compliance violations" that were not

9    identified and where respondents did not suggest the alleged violations were the reason for

10   petitioner's re-detention. (*Id.*) *See also, Gholami v. Chestnut*, No. 1:25-CV-01644-DAD-DMC

11   (HC), 2025 WL 3640675 (E.D. Cal. Dec. 16, 2025) (construing Respondent's non-

12   responsiveness and unsubstantiated allegations of release violations as concessions that the

13   present matter and *Rocha Chavarria* were not substantively distinguishable).

14       Unlike the Respondents in *Rocha Chavarria* and *Bernal*[2], DO Kichak's declaration and

15   attached exhibits contained sufficient, independent verifiable supporting documentation

16   regarding the quantity, nature and substance of Petitioner's alleged ISAP/ATD violations. *C.f.*

17   *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3,

18   2025) (finding "key factual assertions" made by Respondents were not adequately supported

19   when the deportation officer did not state the "basis for personal knowledge for the facts claimed

20   in his declaration."). Furthermore, unlike the Petitioners in *Rocha Chavarria* and *Berna*, the

21   Petitioner here incurred seven missed home visits, one missed in person office visit, and multiple

22   missed virtual biometric check-ins. (Doc. 8 at 19.)

23       Nevertheless, the Court finds there is at least some risk of erroneous deprivation under

24   the present circumstances, with the record suggesting several reasons why Petitioner's detention

25   may not be justified. First, in 2021, in releasing her on parole, DHS necessarily concluded that

26

27   [2]In *Bernal*, the court found that Petitioner was likely in compliance with the conditions of her release -- preserving the full force of her liberty interest -- given that Respondents provided "no detail about the restrictions – if any – required by [the ATD] program," and nothing regarding the timing or substance of Petitioner's alleged release

28   violations. No. 25-CV-09772-RS, 2025 WL 3281422, at *5 (N.D. Cal. Nov. 25, 2025)

1    Petitioner was not a flight risk or danger to the community. *Noori v. LaRose, et al.,* 2025 WL

2    2800149, at 13* (S.D. Cal. Oct. 1, 2025) (In general, '[r]elease reflects a determination by the

3    government that the noncitizen is not a danger to the community or a flight risk.'" *Saravia v.*

4    *Sessions,* 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v.*

5    *Sessions,* 905 F.3d 1137 (9th Cir. 2018)."

6        The Supreme Court has held that "the Constitution requires some kind of a hearing

7    *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113,

8    127 (1990) (emphasis in original). However, the Court also recognized that there may be

9    situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate.

10    *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is

11    impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9

12    (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is

13    required to satisfy due process, particularly where an individual has been released on bond by an

14    IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line

15    should be drawn. Some courts that have addressed detention-related habeas petitions brought by

16    persons released with enhanced supervision conditions have required pre-deprivation process,

17    but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025

18    WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a

19    petitioner arrested by ICE immediately after appearing in immigration court. That court agreed

20    with the petitioner that ICE's post hoc explanation that violations warranted his detention was

21    pretextual, given that ICE first became aware of petitioner's alleged violations a few hours

22    before his immigration hearing, DHS did not raise those violations at the hearing or argue the

23    petitioner should be detained for any reason, and the petitioner was then provided multiple,

24    inconsistent justifications for his arrest. *Id.* In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO

25    (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction

26    sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate

27    release of in immigration detainee who had been in compliance with his conditions of release,

28

1    even though he had incurred a misdemeanor arrest while on parole, in part because no charges

2    were ever filed.

3              In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No.

4    1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's

5    records indicated numerous violations. Though Martinez Hernandez offered explanations for the

6    violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance

7    upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the

8    facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation

9    hearing would have been impracticable and/or would have motivated his flight."). As this Court

10   noted in *Martinez Hernandez*:

11               In similar circumstances, courts have refused to release the
                 petitioners but have ordered timely bond hearings. *Carballo v.*
12               *Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL
                 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v.*
13               *Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5
                 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-
14               CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023).
                 "[A]llowing a neutral arbiter to review the facts would significantly
15               reduce the risk of erroneous deprivation." *Guillermo M. R. v.*
                 *Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D.
16               Cal. July 17, 2025). Thus, the Court concludes that prompt, post-
                 deprivation process is required here.
17

18   *Id*. Finally, as to the third *Mathews* factor, this Court concludes that the government's interest in

19   detaining Petitioner without proper process is slight. "Since respondents did not engage with

20   Petitioner's due process arguments, they have not provided the court with any information

21   regarding the burden on the government." *Rocha Chavarria,* 2025 WL 3533606, at *4. In sum,

22   sum, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits

23   on her due process claim.

24              **B.  Remaining Preliminary Injunction Factors**

25              The remaining preliminary injunction factors—irreparable harm, the balance of equities,

26   and the public interest—decidedly weigh in favor of Petitioner. "[I]t is well established that the

27   deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v.*

28   *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976));

1    *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical

2    liberty by detention constitutes irreparable harm."). By successfully demonstrating that

3    Respondents lack a basis to detain her, Petitioner has succeeded in showing irreparable harm.

4         As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

5    balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.

6    Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073,

7    1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in

8    the Government's favor. While the government has a compelling interest in enforcing the

9    immigration laws, granting relief to Petitioner will not seriously impinge its ability to do so.  The

10   Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being

11   enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727

12   (9th Cir. 1983).  Moreover, "the public has a strong interest in upholding procedural protections

13   against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of

14   immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at

15   *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL

16   783561, at *3 (N.D. Cal. Mar. 1, 2021)). In sum, the last two *Winter* factors also weigh in

17   Petitioner's favor.

18   **V.    CONCLUSION AND ORDER**

19        1.    Petitioner's Motion for Temporary Restraining Order (Doc. 2) is converted to a

20   Motion for Preliminary Injunction, and it is **GRANTED in PART.**

21        2.    Petitioner **SHALL** be provided a substantive bond hearing no later than **January**

22   **30, 2026** at which the Immigration Judge will determine whether Petitioner poses a risk of flight

23   or a danger to the community if she is released.

24        3.    At any such hearing, the Government **SHALL** bear the burden of establishing, by

25   clear and convincing evidence, that Petitioner poses a danger to the community or a risk of

26   flight, and Petitioner **SHALL** be allowed to have counsel present.

27        4.    The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. See

28   *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases

like this one. See, e.g., *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

           5.   The parties are directed to meet and confer no later than 14 days from the date of the entry of this order, and, if possible, submit a joint proposed briefing schedule discussing the abeyance of further proceedings on the merits pending the 9th Circuit Appeal of *Rodriguez Vazquez v. Bostock,* 779 F.Supp.3d 1239 (W.D. Wash. 2025). If the parties are unable to agree to a joint proposed briefing schedule, the Court can rule on the request.

      6.   The government may file a further brief on the merits of the habeas petition within 45 days. Alternatively, as soon as it can within that 30-day period, the government may file a notice that it does not intend to file further briefing. If the government files an additional brief, Petitioner may file a further brief within 30 days thereafter.

      5.   The matter is referred to the assigned magistrate judge for consideration of the merits of the petition as quickly as possible.

IT IS SO ORDERED.

  Dated:   **January 13, 2026**

UNITED STATES DISTRICT JUDGE