# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MELINA SOLANO BEJARANO,

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

Case No. 1:25-cv-01905-JLT-SAB-HC

FINDINGS AND RECOMMENDATION TO DENY FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

(ECF No. 22)

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Peru who entered the United States on June 25, 2021, seeking asylum. When Petitioner arrived in the United States, federal agents briefly detained her and then released her on her own recognizance.[1] On October 18, 2021, a notice to appear was issued for Petitioner to appear in immigration court on January 25, 2022. Since then, Petitioner alleges she has done everything the government asked her to do and has diligently attended every Immigration and Customs Enforcement ("ICE") and United States Citizenship and Immigration Services ("USCIS") appointment and check-in.[2] (ECF No. 22 at 2.[3])

---

[1] As a condition of her release, Petitioner was required to enroll and successfully participate in the Alternatives to Detention ("ATD") and Intensive Supervision Appearance Program ("ISAP"). (ECF No. 8 at 9.)

[2] Respondents describe Petitioner's ISAP compliance differently, asserting that Petitioner violated the conditions of her release several times between July 2021 to November 2025. (ECF No. 8 at 9–10, 19.)

[3] Page numbers refer to the ECF page numbers stamped at the top of the page.

On November 3, 2025, Petitioner missed an ISAP interview at her home. Petitioner was terminated from the ATD program and was taken into ICE custody that day.[4] (ECF No. 3 at 3; ECF No. 8 at 10.)

On March 25, 2026, an immigration judge ("IJ") denied Petitioner's applications for relief and ordered Petitioner removed to Peru. (ECF No. 25 at 8–17.) Petitioner appealed to the Board of Immigration Appeals ("BIA") on April 8, 2026. That appeal is pending. (ECF No. 22 at 2.)

Meanwhile, on December 17, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 2, 3.) On January 13, 2026, the assigned district judge converted the motion for TRO to a motion for preliminary injunction, granted the motion in part, and ordered that Petitioner be provided a substantive bond hearing before an IJ where the government bears the burden of establishing by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight. (ECF No. 10.) On January 28, 2026, an IJ held the ordered bond hearing and denied bond, finding Petitioner to be a flight risk. (ECF No. 17 at 6–7.)

On March 18, 2026, Petitioner filed a supplemental petition. (ECF No. 16.) On October 2, 2026, Petitioner filed a motion to amend, a first amended petition ("FAP"),[5] and an amended motion for temporary restraining order. (ECF Nos. 21–23.) On October 5, 2026, the assigned district judge denied the amended motion for temporary restraining order and granted the motion to amend. (ECF No. 24.) On October 12, 2026, Respondents filed a response to the FAP, and Petitioner filed a reply on October 16, 2026. (ECF Nos. 25, 26.)

---

[4] Petitioner claims that her most recent November 2025 violation occurred because she was picking up her daughter from pre-school and was two minutes late for an ISAP interview at her home. Petitioner claims to have alerted ISAP officials that she was almost to her house and upon arriving, saw an ISAP officer. After trying to speak with the ISAP officer, Petitioner claims the officer informed her she was in violation of her conditions of release and left. Minutes later, Petitioner received a message instructing her to appear at the ISAP office the following day – November 4, 2025. In an effort "to avoid any misunderstanding and acting in good faith," Petitioner claims that she went to the ISAP office that very same day, but upon arriving at the ICE office in Bakersfield, California, Petitioner was detained for multiple violations of her conditions of release. (ECF No. 3 at 3.)

[5] Although the document is entitled "SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR A DECLARATORY AND INJUNCTIVE RELIEF," (ECF No. 22 at 1), there was no first amended petition previously filed, and the docket entry lists the document as the first amended petition. Accordingly, the Court will refer to ECF No. 22 at the first amended petition or FAP.

## II.

## DISCUSSION

### A. Procedural Due Process

In the second claim for relief, Petitioner asserts a procedural due process claim. (ECF No. 22 at 11.) The parties agree that Petitioner is detained under § 1226(a). (ECF No. 25 at 3.) "The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches' authority over immigration. Section 1226(a) offers substantial procedural protections to detained persons," and the Ninth Circuit has held that "§ 1226(a)'s procedures satisfy due process[.]" Rodriguez Diaz, 53 F.4th at 1193, 1213. In Rodriguez Diaz, the Ninth Circuit rejected the petitioner's prolonged detention due process claim and held that due process did not require a second bond hearing at which the government bears the burden of proof by clear and convincing evidence for a petitioner detained under § 1226(a) fourteen months after his first § 1226(a) hearing was held. Id. at 1203–14.

As Rodriguez Diaz did "not foreclose all as-applied challenges to § 1226(a)'s procedures," 53 F.4th at 1213, the Court will apply the Mathews v. Eldridge, 424 U.S. 319 (1976), test to determine whether Petitioner is entitled to a second bond hearing. See Rodriguez Diaz, 53 F.4th at 1193, 1206 ("assum[ing] without deciding," in context of petitioner detained under to 8 U.S.C. § 1226(a) seeking a second bond hearing, that Mathews test applied, noting the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); id. at 1219 (Wardlaw, J., dissenting) ("agree[ing] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation").

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest,

///

> including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

1. Private Interest

"As a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf v. Napolitano, 634 F.3d 1081, 1092 n.13 (9th Cir. 2011). Here, Petitioner has been detained for twelve months. It "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)). While "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor" in light of her previous bond hearing and given Petitioner's "private interests are further diminished by the fact that [s]he is subject to an order of removal from the United States," Petitioner "has a legitimate and reasonably strong private liberty interest under *Mathews*." Rodriguez Diaz, 53 F.4th at 1207, 1208. Accordingly, the Court finds the first Mathews factor weighs in favor of Petitioner.

2. Risk of Erroneous Deprivation

On January 28, 2026, Petitioner received a bond hearing where the government bore the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or danger such that her detention is justified. (ECF No. 17 at 6–7.) Like the petitioner in Rodriguez Diaz, this bond decision "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)).

///

Petitioner argues that the "bond hearing that Petitioner was provided was inadequate as the burden was improperly shifted to Petitioner in this matter." (ECF No. 22 at 8.) Here, the IJ's written order stated: "TRO bond hearing: DHS's burden." (ECF No. 17 at 6.) A review of the bond hearing recording establishes that the IJ stated multiple times that the burden was on the government. (ECF No. 18.) As Petitioner does not provide further arguments or explanation regarding how the IJ improperly shifted the burden to Petitioner, the Court finds the second Mathews factor weighs against Petitioner.

3. Government Interest

"[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). "These are interests of the highest order that only increase with the passage of time." Rodriguez Diaz, 53 F.4th at 1208. "The government interest in immigration enforcement in general is surely substantial. But the question here is not the government's interest in immigration enforcement [in general] but its interest in" detaining Petitioner without providing her with an additional bond hearing. Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (The "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing."), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020); Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Accordingly, the Court finds the third Mathews factor weighs in favor of Petitioner.

4. Conclusion

Based on the foregoing, the Court recommends finding that the low risk of erroneous deprivation outweighs Petitioner's private interest in freedom from prolonged detention and the government's interest in continuing to detain Petitioner without a second bond hearing such that

due process does not compel a second bond hearing at this time. Petitioner does not demonstrate that her case is distinguishable from Rodriguez Diaz. Accordingly, the Court recommends finding that Petitioner is not entitled to relief on her procedural due process claim.

**B. Substantive Due Process**

In the first claim for relief, Petitioner asserts a substantive due process claim. (ECF No. 22 at 10–11.) "As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746 (1987) (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

This Court has previously looked at the following three factors to determine whether an immigration detainee subject to prolonged detention is entitled to relief under the Fifth Amendment's substantive due process clause: "(1) length of detention and whether it is excessive in relation to its regulatory purpose; (2) evidence supporting the determination that detention is warranted to prevent flight risk or community danger; and (3) conditions of confinement." Shafaq v. Warden, California City Corr. Facility, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *5 (E.D. Cal. June 22, 2026) (citing Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *7–11 (E.D. Cal. June 2, 2025)).

1. Length of Detention

In the context of criminal pretrial detention, the Ninth Circuit has observed, "It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). Torres held that the twenty-one-month detention due to the COVID-19 pandemic and related courthouse closures did not violate due process, but the Ninth

Circuit "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.")). In the immigration detention context, the Ninth Circuit has stated that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf v. Napolitano, 634 F.3d 1081, 1092 n.13 (9th Cir. 2011).

The Ninth Circuit has upheld an immigration detainee's detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit. Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008). This Court has held that a petitioner's "detention of twenty-one months is not excessively prolonged to find a substantive due process violation," Shafaq v. Warden, California City Corr. Facility, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *8 (E.D. Cal. June 22, 2026), and a petitioner's "thirty-month detention, during which Petitioner received an individualized bond hearing before an immigration judge where the government had the burden of justifying his continued detention by clear and convincing evidence, without more, does not violate Petitioner's substantive due process rights," Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *10 (E.D. Cal. June 2, 2025). Here, Petitioner has been detained for twelve months. Accordingly, the Court recommends finding that the length of detention does not weigh in favor of Petitioner.

2. Danger and Flight Risk

With respect to danger and flight risk, the Court reviews the immigration judge's ("IJ") determination for an abuse of discretion. Shafaq, 2026 WL 1785249, at *6. Under that standard, "we cannot reweigh evidence ... [but] can [only] determine whether the [IJ] applied the correct legal standard." Martinez v. Clark, 124 F.4th 775, 784, 785 (9th Cir. 2024) (last alteration added) (internal quotation marks omitted) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.* And "[t]he *Guerra* factor most pertinent to assessing dangerousness" is "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40).

Martinez, 124 F.4th at 783.

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771-72.

Martinez, 124 F.4th at 785.

Here, in denying bond, the IJ stated:

> TRO bond hearing: DHS's burden. Respondent is a flight risk such that no amount of bond or conditions would ensure her future Court appearance. The Court considered "all relevant and probative evidence." See Matter of Dobrotvorskii, 29 I&N Dec. 2011 (BIA 2025). This Court assigns great weight to the fact that Respondent's sponsor does not state that he would ensure Respondent's future Court appearance in Immigration Court. See id. at 213-14 (internal citations omitted). The sponsor's letter does not provide the extent of their relationship. Respondent does not have any familial ties to the sponsor. Respondent does not have familial ties to anyone in the U.S. with status. The Respondent entered the U.S. without inspection and does not have a history of stable housing or employment. Respondent is also subject to the Asylum Cooperative Agreement with Ecuador.

(ECF No. 17 at 6.)

An "IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on . . . evidence that 'bear little if any relevance' to Petitioner's risk of flight, while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts." Perez Velasquez v. Bondi, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (quoting Matter of Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976)). Here, the IJ properly considered whether Petitioner has a fixed address in the United States, Petitioner's length of residence in the United States, Petitioner's family ties in the United States, and Petitioner's employment history. "Because the IJ . . . w[as] entitled to place some weight on [these factors] in their analysis . . . , the Court generally lacks jurisdiction to review whether they placed too much." Kharis v. Sessions, No. 18-CV-04800-JST, 2018 WL 5809432, at *8 (N.D. Cal. Nov. 6, 2018). Accordingly, the Court recommends finding that the second factor does not weigh in favor of Petitioner.

3. Conditions of Confinement

> "[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.' " *Id.* at 933–34 (alteration accepted) (first quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021) (first alteration added).

In Jones v. Blanas, 393 F.3d 918, (9th Cir. 2004), the Ninth Circuit held:

> With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.

Jones, 393 F.3d at 934. However, in Fraihat, which addressed whether ICE's COVID-19 policies reflected unconstitutional punishment under the Fifth Amendment, the Ninth Circuit observed that "*Jones* announced the foregoing comparative presumption in the context of a California state

prisoner who was civilly detained and awaiting proceedings under California's Sexually Violent Predator Act" and "Plaintiffs have not identified authority from this Court extending *Jones*'s presumption to the context of federal immigration detainees." Fraihat, 16 F.4th at 648. The Ninth Circuit further observed that there is "no support in our cases for applying *Jones*'s presumption about comparative 'conditions' of confinement to the government's continued *ability* to confine persons pursuant to lawful authority." Id. at 649. Although Fraihat "assum[ed] without deciding that it would be appropriate to invoke that presumption in the immigration context," the Court declines to invoke the presumption here because, as noted by the Ninth Circuit, "different government interests are at stake" in the immigration context. Id. at 648.

In Shafaq, this Court found "the conditions of confinement do not significantly weigh in Petitioner's favor" where the petitioner was diagnosed with an inguinal hernia, his scheduled surgery was canceled, and he submitted a letter from a doctor stating that if left untreated, the herniated abdominal contents may become trapped and compromise blood supply to the entrapped tissue leading to tissue death, and that, if not properly managed, the hernia could result in bowel obstruction, perforation, sepsis, and even death. Shafaq, 2026 WL 1785249, at *9. The Court stated that "[a]lthough Petitioner's inadequate access to medical care is deeply concerning, the facts in the record do not rise to the level of a constitutional violation necessitating Petitioner's immediate release." Id. at *10. Here, the FAP states that Petitioner "suffers from serious health issues" and her "detention is putting her at risk of substantial harm and/or hospitalization." (ECF No. 22 at 2.) These allegations are vague and conclusory and thus, the Court recommends finding that the conditions of confinement factor does not weigh in favor of Petitioner.[6]

On balance of all three factors, the Court recommends finding that Petitioner is not entitled to relief on substantive due process grounds.

[6] The Court's consideration of the allegations regarding Petitioner's medical condition set forth in the supplemental petition does not change this conclusion. The supplemental petition asserts that Petitioner suffers from serious health issues related to her gall bladder, she underwent surgery, Petitioner requires post-operative care and medication, and she is not receiving adequate medications. (ECF No. 16 at 3.) Although Petitioner declares that she "feel[s] that [she is] not receiving the adequate medical attention that [her] condition requires," (ECF No. 16-2 at 2), attached to the supplemental petition are documents demonstrating that Petitioner is being prescribed medication and being seen by medical personnel, (ECF No. 16-1). Petitioner does not allege with specificity how the medical care or medications are inadequate.

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that the first amended petition for writ of habeas corpus (ECF No. 22) be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 23, 2026**

STANLEY A. BOONE
United States Magistrate Judge